**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NELWYN MORRISON and JAMES ROUTT, on Behalf of Themselves and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:24-CV-05109** |
| **HARRIS COUNTY HOSPITAL DISTRICT D/B/A HARRIS HEALTH SYSTEM,** | § § § § § | |
| **Defendant.** | § § | |

**PLAINTIFFS' FIRST AMENDED COLLECTIVE COMPLAINT AND JURY DEMAND**

1. This lawsuit is brought by Plaintiffs Nelwyn Morrison and James Routt ("Plaintiffs"), on behalf of themselves and all others similarly situated, against Defendant Harris County Hospital District d/b/a Harris Health System ("Defendant"). The Plaintiffs and proposed Class Members are current and former non-exempt employees of Defendant who were required to undergo COVID-19 screenings without pay. This physical and medical examination constitutes compensable time that the Plaintiffs and Class Members worked for Defendant. Defendant therefore violated both federal law by failing to pay the Plaintiffs and Class Members for all hours that they worked.

2. Defendant's conduct violates the Fair Labor Standards Act ("FLSA"), which requires non-exempt employees to be compensated for all hours worked in excess of 40 in a workweek at one-and-a-half times their regular rate. *See* 29 U.S.C. § 207(a). On behalf of themselves and all others similarly situated employees, Plaintiffs bring this action as a collective

1

action under the FLSA, 29 U.S.C. § 216(b). Members of the collective action are referred to hereinafter as the "Class Members."

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Defendant.  Defendant is a unit of local government in Harris County, Texas.

4.      Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in this District. In particular, Plaintiffs worked and were denied wages in this judicial District.

## PARTIES

5.      Plaintiff Saul Carrillo is an individual residing in Harris County, Texas.  His written consent to this action was previously filed with the Court

6.      Plaintiff Nelwyn Morrison is an individual residing in Harris County, Texas.  Her written consent to this action was previously filed with the Court.

7.      Defendant Harris County Hospital District is a governmental unit and hospital district that owns and operates hospitals and clinics in Harris County, Texas.  Defendant has been served and has made an appearance in this case.

8.      The Class Members are all current and former hourly employees who underwent a COVID-19 screening while working for Defendant at any time during the three-year period prior to the filing of this lawsuit to the present.

## FLSA COVERAGE

9.      At all material times, Defendant has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

10.     Defendant is and has at all material times been an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203. *See id.* at § 203(s)(1)(b) ("enterprise engaged in commerce or in the production of goods for commerce" defined to include an enterprise "engaged in the operation of a hospital").

11.     At all material times, Plaintiffs and the Class Members were employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

12.     At all material times, Plaintiffs and the Class Members were not exempt from overtime under the FLSA.

## FACTS

13.     The novel Coronavirus infected over 100 million Americans and caused the deaths of over one million Americans. (*See* https://coronavirus.jhu.edu/map.html, last visited January 27, 2025). In Harris County, Texas, over one million people were infected with the Coronavirus. (*See id*.)

14.     Following the outbreak of the Coronavirus, Defendant implemented a policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Defendant as a requirement to work each shift. The examination was conducted on the premises of Defendant, was required by Defendant, and was necessary for each employee to perform his/her work for Defendant. Unfortunately, Defendant refused to pay for this time. Defendant's conduct violates both Texas law and the FLSA.

15.     Defendant operates hospitals and medical clinics throughout Harris, County, Texas. To provide its services, Defendant employs healthcare workers.  These healthcare workers provide services aimed at treating injured and ill individuals in Harris County.

16.     Plaintiff Morrison worked for Defendant as an hourly, non-exempt employee at Ben Taub Hospital.  She worked as a patient care assistant II.  Her job duties included various nursing duties such as attending to patients, checking on the vital signs of patients, monitoring the progress of patients, and other patient care duties.  Her normal work schedule was 7 am to 7pm for five days per week.  She worked for Defendant from approximately March 2021 to November 2022.  In one or more individual workweeks during her employment, Plaintiff Morrison worked 40 or more hours.

17.     Plaintiff Routt worked for Defendant as an hourly, non-exempt employee at Ben Taub Hospital.  His job position was EVS Supervisor.  His job duties included supplying hospital rooms with all necessary supplies and was responsible for cleaning the various hospital rooms. His normal work schedule was 2 pm to 11 pm for five days per week.  He worked for Defendant from approximately March 2016 to October 2022.  In one or more individual workweeks during his employment, Plaintiff Routt worked 40 or more hours.

**PLAINTIFFS AND CLASS MEMBERS WERE NOT PAID FOR ALL WORK TIME AS A RESULT OF COMPLETING COVID-19 SCREENINGS "OFF THE CLOCK"**

18.     As hourly, non-exempt employees, Plaintiffs were required to clock-in and clock-out each day. Unfortunately, Defendant did not pay for all hours that they worked. Prior to clocking in each day, Plaintiffs were required to undergo a physical and medical examination to screen for COVID-19.

19.     Defendant required its employees to arrive at its hospitals and medical clinics prior to the start of their scheduled shifts. However, when employees of Defendant arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for the symptoms of COVID-19.

20.     After Defendant's employees arrived at the hospitals and medical clinics, they were

4

required to form a line standing six feet apart.  For example, at Ben Taub Hospital, the COVID screening station was at the front door by the reception area.  At that station, each employee was screened one by one.  Given the number of employees in line, the waiting time to be screened was approximately 10-20 minutes.

21.    After approaching the screening station, employees were required to undergo a COVID screening examination.  The examination consisted of answering a series of questions about one's health, having one's temperature taken, and putting on a mask.  During the COVID screening, the questions included whether the employee had been exposed to others who had the Coronavirus and whether the employee had any symptoms of the Coronavirus, such as a runny nose or shortness of breath. If the employee failed the examination, the employee was required to undergo a more thorough examination off the clock.

22.    If the employee successfully cleared the examination, the employee was allowed to work for the day.  Employees were required to clock-in on a physical time clock.  However, many of the time clocks were located distances far away from the screening station.  The time to walk to the time clocks from the screening station was approximately 5-10 minutes.

23.    Defendant was aware that there were long lines for the COVID screening and that employees had to walk far distances at times to clock-in.  Defendant's supervisors told employees to arrive 10-15 minutes early so that they could complete the screening with enough time to clock-in by the start of their shifts.

24.    The COVID-19 screening should have been paid by Defendant because it constitutes compensable time worked. During this time, Plaintiffs and the Class Members were subject to the control of Defendant.

25.    Plaintiffs and the Class Members were required to follow Defendant's instructions

while awaiting and during the COVID-19 screening. Defendant required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Defendant and its employees were required to comply the screening under threat of discipline, including possible termination.

26.     Additionally, Plaintiffs and the Class Members were confined to the premises of Defendant when they waited for and during the examinations.

27.     Moreover, Defendant compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

28.     In other words, Defendant directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and they remained subject to Defendant's control during the examination.

29.     Under the FLSA, the time spent undergoing the COVID-19 screening is compensable time that should have been paid by Defendant. The COVID-19 screenings were required by Defendant, and Plaintiffs and the Class Members were told in advance that they were required to pass the screening to work for the day.

30.     The COVID-19 screenings were also necessary to the principal work performed by the Plaintiffs and Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were undertaken on Defendant's premises, were controlled and required by Defendant, and undertaken primarily for the benefit of Defendant.

31.     Indeed, Defendant required Plaintiffs and the Class Members to complete this screening for the purposes of overall safety at Defendant's hospitals and clinics and to prevent the Plaintiffs and the Class Members from inadvertently and unintentionally infecting Defendant's

facilities or Defendant's patients.  The job duty of the Plaintiffs and the Class Members was to help patients of Defendant and the screening was necessary to ensure that Plaintiffs and the Class Members safely provide that service.

32.     Indeed, the COVID-19 examinations were necessary to ensure that the virus did not disrupt the work performed by the Plaintiffs and the Class Members or affect the operations of Defendant. If Defendant did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into Defendant's hospitals and medical clinics, causing other workers to be infected and patients to be infected.  If a mass breakout happened at any of Defendant's facilities, many people would have died and Defendant's facilities would likely have been shut down.

33.     Thus, the COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by the Plaintiffs and the Class Members, which was to serve, aid, and assist Defendant's patients.  Indeed, if Defendant cancelled the COVID-19 screening, Defendant's hospitals and medical clinics could have gotten contaminated with the virus, patients would have contracted the virus, and Defendant's workers would have contracted the virus.  In that event, the Plaintiffs and the Class Members would not be able to do their work. Therefore, the COVID-19 screenings were necessary to ensure that the Plaintiffs and the Class Members could do their jobs for Defendant.

34.     The Department of Labor has issued regulations stating that physical and health examinations, like the COVID-19 examinations, constitute time that should be paid for by employers. *See* 29 C.F.R. § 785.43.

> In an opinion letter, the Department of Labor has further stated
> as follows: Time spent undergoing a physical examination is
> time during which the employee's freedom of movement is
> restricted for the purpose of serving the employer and time
> during which the employee is subject to the employer's

7

> discretion and control. It is immaterial whether the time spent in undergoing the required physical examination is during the employee's normal working hours or during nonworking hours. The physical examination is an essential requirement of the job and thus primarily for the benefit of the employer. **Therefore, it is our opinion that the time so spent must be counted as hours worked under the FLSA.**

DOL Wage and Hour Opinion Letter, January 26, 1998 (emphasis added).

35.    In fact, the Department of Labor has issued guidance providing that the time spent in the COVID-19 screenings should be compensated by employers. The Department of Labor has stated as follows:

> your employer is required to pay you for all hours that you work, including for time before you begin your normal working hours if the task that you are required to perform is necessary for the work you do. **For many employees, undergoing a temperature check before they begin work must be paid because it is necessary for their jobs. For example, if a nurse who performs direct patient care services at a hospital is required to check her temperature upon arrival at the hospital before her shift, the time that she spends checking her temperature upon entry to the worksite is likely compensable because such a task is necessary for her to safely and effectively perform her job during the pandemic.** In other words, the temperature check is integral and indispensable to the nurse's job. Other laws may offer greater protections for workers, and employers must comply with all applicable federal, state, and local laws.

(https://www.dol.gov/agencies/whd/flsa/pandemic#:~:text=Yes%2C%20if%20you%20are%20required,exceptions%20stated%20in%2029%20C.F.R., last January 27, 2025) (emphasis added).

36.    Under this guidance, the time spent by the Plaintiffs and Class Members completing the COVID-19 screening is compensable because it enables the Plaintiffs to perform their work for Defendant.

37.    Indeed, courts have held that the time spent by employees completing COVID screenings at medical clinics and other locations is compensable under the FLSA. *See, e.g.*, *Harwell-Payne v. Cuday Place Senior Living, LLC*, 2024 U.S. Dist. LEXIS 55966 (E.D. Wisc. Mar. 28, 2024) (granting summary judgment for plaintiffs on the grounds that the time spent in

COVID screenings is compensable under the FLSA); *Boone v. Amazon.com Services, LLC*, 562

F. Supp. 3d 1103 (E.D. Cal. 2022) (denying motion to dismiss claim that the time spent undergoing

COVID screenings is compensable under the FLSA).

38.    Thus, Defendant has violated both Texas and federal law by failing to pay for the

time spent undergoing the COVID-19 examinations.

39.    In light of Defendant's conduct, Plaintiffs and the Class Members are owed

significant unpaid wages.

40.    Plaintiffs and the Class Members are and were non-exempt employees.

41.    Plaintiffs and the Class Members are and were paid on an hourly rate basis.

42.    When they worked more than forty hours in a workweek, they were entitled to

overtime pay.

43.    The COVID-19 screenings identified above were not incidental activities for the

Plaintiffs and the Class Members, but instead, this time was integral and indispensable to their

principal activity and is compensable.

44.    Although Defendant employs electronic "clocking-in" technology, this technology

was not made accessible to Plaintiffs and the Class Members before completing the COVID-19

screenings.

45.    As a result of Defendant's policies, Plaintiffs and the Class Members were not paid

for all time worked each day and are owed significant unpaid wages.

46.    Defendant's method of paying Plaintiffs and the Class Members in violation of the

FLSA and Texas law was willful and was not based on a good faith and reasonable belief that their

conduct complied with the law. Defendant knew the requirement to pay for all time worked, but

intentionally and/or recklessly chose not to do so.

9

## CONTINUOUS WORKDAY RULE

47.     Pursuant to the continuous workday rule, once the first compensable activity is performed, the continuous workday has started and all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a).   The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id*.  Specifically, section 790.6(a) states as follows:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

*Id*.

48.     Thus, pursuant to the continuous workday rule, the Plaintiffs and Class Members are entitled to compensation from the time they first performed their principal activities. Defendant failed to do so.

49.     The pre-shift activities identified above were not incidental activities for the Plaintiffs and Class Members, but instead, this time was integral and indispensable to their principal activity and is compensable.

50.     Due to the substantial pre-shift work, Plaintiffs and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

## CAUSE OF ACTION: FAILURE TO PAY OVERTIME WAGES
### Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

### (On Behalf of Plaintiffs and the Class Members)

51.     Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

52.     At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed employees, including Plaintiffs and the Class Members, as defined by the FLSA.

53.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a)) provides that an employer shall pay its employees at a rate no less than time-and-a-half for all hours worked more than 40 hours per workweek.

54.     The Plaintiffs and Class Members are employees entitled to overtime wages for all hours worked in excess of 40 per workweek at the rate of one-and-a-half times their regular rate of pay.

55.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one-and-a-half times the regular rate at which its employees are paid are applicable to Defendant, Plaintiffs, or the Class Members.

56.     Pursuant to 29 U.S.C. § 216(b), the Plaintiffs and the Class Members are entitled to recover their unpaid wages and liquidated damages in an amount equal to their unpaid wages.

57.     The Plaintiffs and Class Members are also entitled to recover their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

58.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

## COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

60.     Plaintiffs have actual knowledge that the Class Members also were required to undergo the above-described COVID-19 screenings and were denied pay for such time. Plaintiffs

worked with and communicated with other hourly, non-exempt employees and as such, have personal knowledge that the policies described in this lawsuit harmed other workers.

61.    Although Defendant permitted and/or required theClass Members to work more than 40 hours per week, it denied them full compensation for their overtime hours.

62.    The Class Members are not exempt from receiving overtime pay.

63.    Plaintiffs are similarly situated to the Class Members in that they, too, were classified as non-exempt from overtime, were paid on an hourly basis, and underwent the COVID-19 screenings without pay.

64.    Defendant's failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of any potential Plaintiff.

65.    The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment; all Class Members, irrespective of their particular job requirements, are entitled to overtime compensation at the rate of time-and-a-half for hours worked in excess of 40 during a workweek.

66.    Although the exact amounts of damages may vary among the Class Members, the damages can be easily calculated by a simple formula. The claims of all Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all Class Members.

67.    The similarly situated Class Members are known to Defendant, are readily identifiable, and can be located through Defendant's records. They should be notified and allowed to opt into this action pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating

their claims for overtime compensation, liquidated damages and/or prejudgment interest, and

attorneys' fees and costs.

68.     As such, the FLSA Class is properly defined as follows:

> **All current and former hourly paid employees of Defendant who underwent a COVID-19 screening while working for Defendant at any time during the three-year period prior to the filing of this lawsuit to the present.**

## JURY DEMAND

69.     Plaintiffs hereby request trial by jury.

## PRAYER

70.     For these reasons, Plaintiffs and the Class Members respectfully request that

judgment be entered in their favor awarding the following relief:

a.   All unpaid wages, including overtime wages;

b.   An amount equal to all unpaid wages as liquidated damages under the FLSA § 216(b);

c.   Reasonable attorneys' fees, costs, and interest;

d.   Such other and further relief to which Plaintiffs and Class Members may be entitled at law or in equity.

Respectfully submitted,

HODGES & FOTY, LLP

By:  /s/ *Don J. Foty*
        Don J. Foty
        Texas Bar No. 24050022
        Two Greenway Plaza, Ste. 250
        Houston, TX 77046
        Telephone: (713) 523-0001
        Facsimile: (713) 523-1116
        dfoty@hftrialfirm.com

COUNSEL FOR PLAINTIFFS AND CLASS MEMBERS

13

## CERTIFICATE OF SERVICE

I hereby certify that the following document was filed on January 27, 2025 via the Court's

electronic case filing system which will serve a copy to all counsel of record.

/s Don J. Foty
Don J. Foty
