UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NELWYN MORRISON and JAMES ROUTT, on Behalf of Himself and on Behalf of All Others Similarly Situated,<br><br>  Plaintiffs,<br><br>v.<br><br>HARRIS COUNTY HOSPITAL DISTRICT D/B/A HARRIS HEALTH SYSTEM,<br><br>  Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 4:24-CV-05109<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**UNOPPOSED MOTION FOR APPROVAL OF
<u>FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT</u>**

Plaintiffs Nelwyn Morrison and James Routt, on behalf of themselves and all others similarly situated, file this Unopposed Motion for Approval of Fair Labor Standards Act Collective Action Settlement and respectfully show the Court the following:

**I.   <u>INTRODUCTION</u>**

Plaintiffs and Defendant have reached a settlement of their pending *bona fide* dispute concerning unpaid wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). This settlement provides compensation for unpaid wages to current and/or former employees who were alleged not to have been paid at the rate of time and one half their regular rates of pay for all hours worked over 40 in a workweek.

After Plaintiffs filed this lawsuit, the Parties engaged in discovery. Defendant produced pay records and time records, and the Parties exchanged information related to the damages that could be owed. With this information, the Parties agreed to engage in settlement discussions and ultimately reached a settlement. As part of the settlement, Plaintiffs and each of the Opt-In

Plaintiffs will receive a settlement payment. The final terms of the settlement are reflected in the Settlement Agreement and Release (the "Settlement Agreement"), which is attached hereto as Exhibit 1. The Parties respectfully ask that the Court approved the Settlement Agreement.

## II. FACTUAL BACKGROUND

On August 12, 2024, Plaintiffs filed this collective action lawsuit.[1] The central allegation was that Defendant failed to pay the Plaintiffs and Opt-In Plaintiffs for the time spent off the clock completing COVID-19 screenings. Indeed, following the outbreak of the COVID pandemic, Defendant required its healthcare workers to pass a COVID screening in order to work for the day. Defendant required its employees to arrive at its hospitals and medical clinics prior to the start of their scheduled shifts. However, when employees of Defendant arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for the symptoms of COVID-19.

The COVID screening process involved workers standing in a line six feet apart. For example, at Ben Taub Hospital, the COVID screening station was at the front door by the reception area. After approaching the screening station, employees were required to undergo a COVID screening examination. The examination consisted of answering a series of questions about one's health, having one's temperature taken, and putting on a mask. During the COVID screening, the questions included whether the employee had been exposed to others who had the Coronavirus and whether the employee had any symptoms of the Coronavirus, such as a runny nose or shortness of breath. If the employee failed the examination, the employee was required to undergo a second, more thorough examination off the clock.

---

[1] Plaintiffs originally filed their lawsuit in the 190th Judicial District of Harris County, Texas, Case No. 2024-52148, on August 12, 2024. Defendant filed its notice of removal on December 30, 2024. (ECF No. 1).

If the employee successfully cleared the examination, the employee was allowed to work for the day. Employees were then directed to clock-in on a physical time clock.

In early 2022, Defendant implemented a mobile application that employees were to download on their phones. Defendant's employees were then able to answer the COVID screening questions on their phones and show the results to the person who was stationed at the COVID screening location. After implementing the mobile application, the amount of time workers spent waiting in line was decreased. By June 2022, onsite COVID screenings were no longer performed.

Under the FLSA, employers must compensate their employees for the time spent performing their principal activities and all tasks "integral and indispensable" to their principal activities. *See Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014). An activity is integral and indispensable to the principal activity or activities if it is "an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*.

Through this lawsuit, Plaintiffs argued that the time spent completing the COVID screenings should have been paid for by Defendant as it was "integral and indispensable" to their principal activities in providing healthcare treatment to patients at Defendant's hospitals. *See, e.g.*, *Snyder v. Univ. of Chi. Med. Ctr*., No. 24-C-00985, 2025 U.S. Dist. LEXIS 30310 (E.D. Ill. Feb. 20, 2025) (denying motion to dismiss and finding that the time spent completing the required COVID-19 screenings before shift is compensable under the FLSA); *Harwell-Payne v. Cuday Place Senior Living, LLC*, No. Civ. A. 21-CV-328, 2024 U.S. Dist. LEXIS 55966 (E.D. Wis. Mar. 28, 2024) (granting summary judgment for plaintiffs on the grounds that the time spent in COVID-19 screenings is compensable under the FLSA); *Boone v. Amazon.com Services, LLC*, 562 F. Supp. 3d 1103 (E.D. Cal. 2022) (denying motion to dismiss and finding that the time spent undergoing

COVID-19 screenings is compensable under the FLSA). This settlement resolves the Plaintiffs' claims for unpaid wages.

### III.     ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Indeed, courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c), or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353. Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

4

Here, the Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case and resolves the claims of the Plaintiffs and Opt-In Plaintiffs.

### A.  The terms of the settlement provide fair compensation for the claims raised in the lawsuit.

The Parties' settlement is fair and reasonable and provides significant compensation to the Plaintiffs and Opt-In Plaintiffs for their alleged unpaid overtime hours. The settlement amount provides nearly 100% of the unpaid wages that are owed on the three year statute of limitations period at 8 minutes of unpaid wages per shift worked. Under the FLSA, the statute of limitations for bringing a wage claim is two years. The limitations period may be extended to three years if the Plaintiffs prove willfulness - which is a higher standard. Here, the settlement provides for a recovery that is approximately 95% of the total amount of alleged unpaid wages on the three-year limitations period.

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case. Plaintiffs argued that the time spent completing the COVID-19 screenings is compensable under the FLSA. Defendant countered that the time spent on the COVID-19 screenings was not compensable under the FLSA, if so, the time was *de minimis*, and even if it was not *de minimis*, the Plaintiffs' claims are barred by the two-year limitations period. Accordingly, the Plaintiffs faced significant hurdles in his case.

Indeed, the Parties greatly disagreed as to whether the Plaintiffs could satisfy their burden to demonstrate that Defendant acted willfully, which in turn affects whether the Plaintiffs could recover damages under a two year or three year limitations period. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether Defendant would satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case. Due to the

directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Parties.

    **B.**    **The Parties have agreed on a fair and reasonable notice plan to administer the settlement.**

There are 38 Plaintiffs and Opt-In Plaintiffs who will be eligible to receive a payment under the Settlement Agreement. In the event that the Court approves the settlement, each Plaintiff and Opt-In Plaintiff will receive a notice of the settlement, as reflected in Exhibit "B" to the Settlement Agreement along with a settlement payment. As part of the settlement, the Parties have also agreed to a Service Award for Plaintiffs Morrison and Routt. Otherwise known as a "service payment" or "incentive award," this amount is in addition to their pro rata settlement share. In light of the efforts they provided on behalf of the Opt-In Plaintiffs and the valuable contributions the Plaintiffs made throughout the litigation, particularly in its initial phases, Plaintiffs' Counsel submits that the incentive award is reasonable.

    **C.**    **The attorney's fees sought are fair and reasonable. Plaintiffs' Counsel is seeking a 30% contingency fee award.**

Additionally, the amount sought by Plaintiffs' Counsel for attorney's fees is fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers and thereby, to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).

       **1.**       **Plaintiff's Counsel employed their expertise in the area of wage and hour litigation to achieve a favorable outcome for the Plaintiffs and Opt-In Plaintiffs.**

Each Plaintiff and Opt-In Plaintiff will receive a cash payment representing a recovery for his/her alleged claims for damages. As noted earlier, the settlement provides for monetary relief representing approximately 95% of the unpaid wages on the three-year limitations period. This is a significant recovery given the facts of the case and the relative merits of, and risks related to, Plaintiffs' claims and Defendant's possible defenses.

When evaluating a claim for attorney's fees, **a party's success in the litigation is the "most critical" factor.** *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992). In determining the reasonableness of the requested attorney's fees, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988-89 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* court showed that the average result achieved for Collective Action Members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is much higher. Under Plaintiffs' theory of the case, Plaintiffs' Counsel has prevailed in securing compensation for the Plaintiffs and Opt-In Plaintiffs. Under Defendant's theory, Plaintiff would be owed zero.

During this case, Plaintiffs' Counsel engaged in discovery, reviewed time records and pay records, calculated the potential damages, participated in settlement discussions, and performed other work that resulted in a settlement. It is important to note that Plaintiffs' Counsel will continue to work on this case in the future. Plaintiffs' Counsel will spend time fulfilling their obligations in the settlement, working with Defendant to ensure the smooth administration of the settlement, and responding to inquiries from the Opt-In Plaintiffs.

Furthermore, the legal theories involved in this case required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to the Plaintiffs in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Plaintiffs and Opt-In Plaintiffs. For these reasons, Plaintiffs' Counsel respectfully requests that the Court approve the settlement.

> **2.    Plaintiffs' Counsel's contingency fee interest is less than those customarily approved by courts in the Fifth Circuit.**

Plaintiffs' Counsel undertook representation in this case on a contingency fee basis. The 30% contingency fee interest that is sought is lower than the 40% contingency fee award that is normally approved in FLSA collective actions such as this case. *See, e.g.*, *Sarabia v. Spitzer Indus., Inc*., No. Civ. A. 4:17-CV-2092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) (approving 40% and stating that a 40% fee "is in line with that approved in other FLSA cases."). In fact, courts in the Fifth Circuit regularly approve a 40% contingency fee to the plaintiff's counsel. *See id*.; *see also Sterling v. Greater Hous. Transp. Co., et al*., No. Civ. A.: 4:20-cv-00910 (S.D. Tex. Apr. 19, 2022) (Dkt. 150) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA collective action); *Green-Johnson v. Fircroft*, et al., No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA case); *Hamilton v. Enersafe, Inc*., No. Civ. A. 5:15-CV-965-JKP, 2020 WL 12029225 (W.D. Tex. Feb. 7, 2020) (same); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*; No. Civ. A. 1:12-cv-00243 (W.D. Tex., Oct. 8, 2013) (Doc. 71); (same); *Covey, et al. v. Iron Cactus, et al.;* No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. Aug. 6, 2013) (same); *Sandras v. Expeditors & Prod. Serv. Co*., No. Civ. A. 16-0239, 2019 WL 658819 (W.D. La. Feb. 13, 2019) (same); *Venable v. Am. Consulting & Testing, Inc*., No. Civ. A.

6:20-CV-1232 (W.D. La. Feb. 25, 2022) (same); *Ellis v. Baptist Mem'l. Healthcare Corp.*, No. Civ. A. 3:18-CV-73-SA-JMV, 2021 WL 1206408 (N.D. Miss. Mar. 30, 2021) (same); *Karim v. Finch Shipping Co.*, Ltd. 233 F. Supp. 2d 807, 811 (E.D. LA 2002) (same). Moreover, the amount of the fees requested by Plaintiffs' Counsel is less than the Plaintiffs' Counsel's lodestar.

Plaintiffs' fee should also be approved because contingency fee interests provide a benefit to workers and "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Given that Plaintiffs' Counsel undertook the representation on a purely contingent basis, Plaintiffs' Counsel has borne all of the risk of loss, including the prospect of later dispositive motions or unfavorable outcomes at trial or on appeal, and that the investment of substantial attorney time and resources towards the case would be lost. *See, e.g.*, *Herrod v. Kijakazi*, No. 4:20-CV-73-DAS, 2023 U.S. Dist. LEXIS 162254, at *3 (N.D. Miss. Sept. 13, 2023) ("The fact of a contingency agreement warrants an enhanced fee."). Indeed, "[t]here is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011); *see also Hermes Health All., LLC v. Certain Underwriters at Lloyd's*, No. 20-1654, 2022 U.S. Dist. LEXIS 71320, at *10 (E.D. La. Apr. 18, 2022) (contingency fee contract "promotes access to needed legal services for those without means to afford the risk of financial loss").

Further, had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success or compensation. At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiffs' Counsel was at great risk of non-payment despite working on this case for over one year. This risk of non-payment supports the amount requested here.

Finally, the attorney's fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

### D. The settlement should be approved by the Court.

The terms of the settlement have been approved by the Plaintiffs, their counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the settlement agreement voluntarily and knowingly. The Parties agree that the terms of the settlement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 n.10 (E.D. La. Sept. 23, 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement amount, the Parties engaged in negotiations concerning the specific terms of the settlement and the scope of the release. The

settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as exhaustive and hard-fought negotiations.

Ultimately, there can be no question that this settlement represents fair value for the claims raised by Plaintiffs. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

## IV.    CONCLUSION

The terms of the settlement have been approved by the Plaintiffs, their counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the settlement agreement voluntarily and knowingly. The Parties agree that the terms of the settlement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request that the Court approve the FLSA settlement.

| **Of Counsel** | Respectfully submitted, |
|---|---|
| Fazila Issa<br>Texas State Bar No. 24046136<br>fissa@fotylawgroup.com<br>FOTY LAW GROUP<br>2 Greenway Plaza, Suite 250<br>Houston, Texas 77046<br>Telephone: (713) 523-0001<br>Facsimile: (713) 523-1116 | By: /s/ *Don J. Foty*<br>Don J. Foty<br>Texas State Bar No. 24050022<br>dfoty@fotylawgroup.com<br>FOTY LAW GROUP<br>2 Greenway Plaza, Suite 250<br>Houston, Texas 77046<br>Telephone: (713) 523-0001<br>Facsimile: (713) 523-1116<br><br>ATTORNEYS FOR PLAINTIFF AND OPT-IN PLAINTIFFS |

## **CERTIFICATE OF SERVICE**

    I certify that on January 9, 2026 a true and correct copy of the foregoing document was served to all counsel of record via email.

                                               */s/ Don J. Foty*
                                               Don J. Foty